IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JULIA ZELLER                                                                PLAINTIFF

v.                           CASE NO. 08-5021

WAL-MART STORES, INC.                                              DEFENDANT

MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff's Motion for Summary Judgment (Doc. 21) and supporting brief (Doc. 22), Defendant's Response (Docs. 33-34); Defendant's Motion for Summary Judgment (Doc. 23) and supporting documents (Docs. 24-25), Plaintiff's response (Docs. 28-30) and Defendant's Reply (Doc. 41).

Plaintiff contends Defendant discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII) and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.* (ACRA). Plaintiff further contends Defendant discriminated against her based upon a disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, *et seq.* and ACRA and retaliated against her in violation of the Family Medical Leave Act (FMLA), the ADA, Title VII and ACRA. She also alleges a violation of the FMLA for not reinstating Plaintiff to her position after her FMLA leave expired. Finally, Plaintiff alleges a common law claim of wrongful termination.

Plaintiff moves for summary judgment on all claims, as well

AO72A
(Rev. 8/82)

as Defendant's counterclaim for unjust enrichment. Defendant likewise moves for summary judgment in its favor on all Plaintiff's claims, as well as its counterclaim.

## I.   Background

The following facts are undisputed except where otherwise noted.

1.  In January 2001, Defendant hired Plaintiff as a Construction Coordinator in the Home Office.
2.  In late 2004 and early 2005, Defendant's Construction Department hired five new Construction Coordinators to work with Plaintiff.
3.  Around January 2005, Plaintiff's supervisor transferred to a new position, and Plaintiff began reporting to Director of Construction, David Oshinski.
4.  On the afternoon of Friday, December 2, 2005, Defendant's Construction Department held a meeting and announced a restructuring of the department.  Plaintiff and Mr. Oshinski attended this meeting along with other employees.
5.  At the meeting, Senior Director of Site and Building, Bryan Novak, announced that all Construction Coordinators, including Plaintiff, would now report to a new Director of Construction, Karen Ritchey.
6.  On Saturday, December 3, 2005, Plaintiff prepared a written transfer request pursuant to Defendant's transfer policy

        seeking a transfer to a Civil Engineer Manager position within the Design Department.  Plaintiff had not made any prior written transfer request.

7. Pursuant to Defendant's policy, Plaintiff's supervisor had to sign the transfer request for the request to be effective.

8. On Monday, December 5, 2005, Plaintiff met with Mr. Oshinski to discuss her transfer request.  On Tuesday, December 6, 2005, Plaintiff returned to Mr. Oshinski's office at which time Mr. Oshinski informed Plaintiff that Ms. Ritchey would need to sign the transfer request form as she was Plaintiff's supervisor.

9. Ms. Ritchey met with Plaintiff on either December 7, 8 or 12, 2005 and signed Plaintiff's transfer request form on December 13, 2005.

10. Plaintiff claimed that Mr. Oshinski discriminated against her on the basis of her gender by not signing the form.  On December 7 or 8, 2005, Plaintiff sent a request to Defendant's Chief Executive Officer, Lee Scott, asking for a meeting with him pursuant to Defendant's Open Door Communications policy.

11. Mr. Scott's office immediately contacted Elaine Greenway, the People Manager with responsibility over the Construction Department, to initiate an internal investigation of Plaintiff's allegations.

AO72A
(Rev. 8/82)

12. Ms. Greenway contacted Plaintiff on December 8, 2005 to inform her of the investigation and that Case Manager Evan Frary would be responsible for conducting the investigation.

13. On December 9, 2005, Mr. Frary interviewed Plaintiff. During that interview, Plaintiff alleged that Defendant had treated her differently than fellow Construction Coordinator, Lewis "Bo" Spinks, with regard to their respective transfer requests to an open Civil Engineer Manager position in the Design Department. Specifically, Plaintiff claimed that Director of Construction, Greg Boice, Mr. Spinks' supervisor prior to Ms. Ritchey, had signed Mr. Spinks' form, but Mr. Oshinski refused to sign Plaintiff's form. Plaintiff also complained that Mr. Spinks did not meet the requirements to qualify for a transfer because he had not been in his current position for at least eighteen (18) months.

14. Defendant contends that Mr. Boice signed Mr. Spinks' transfer request form prior to the announcement that all Construction Coordinators would report to Ms. Ritchey, however, Plaintiff contends that the record is unclear as to when Mr. Spinks' form was signed.

15. During his investigation of Plaintiff's allegations of gender discrimination, Mr. Frary interviewed other Defendant associates, including Mr. Oshinski, Ms. Ritchey, Mr. Spinks, Mr. Boice and Mr. Novak. On January 16, 2006, Mr. Frary

AO72A
(Rev. 8/82)

completed the investigation, concluding that Plaintiff's allegations could not be substantiated and that there was no violation of Defendant's policies or any unlawful discrimination. Specifically, Mr. Frary concluded, "[Mr. Oshinski] was no longer [Plaintiff's] manager at the time of her request. [Mr. Novak] told [Mr. Oshinski][that][Ms. Ritchey] would have to sign it. [Plaintiff's] transfer request was approved by [Ms. Ritchey]. Mr. Frary also concluded that Mr. Spinks' "transfer request wasn't approved."

16. On January 19, 2006, Mr. Frary communicated the results of the investigation to Plaintiff, and Plaintiff expressed thanks for his work.

17. Around January 2006, the Design Department had four open Civil Engineer Manager positions. The Design Department interviewed Plaintiff for the open positions but did not offer her a position. Mr. Spinks was not interviewed for any of these four positions, and both he and Plaintiff continued working as Construction Coordinators in the Construction Department.

18. In January and February 2006, the Design Department filled the four open positions, hiring Dwayne Douglas Smith, John Ashley Tucker, David S. Cox and Brad Adams. Defendant considered these four individuals to be more qualified than

      Plaintiff because, in addition to their respective work histories, they each held a college degree in either civil engineering or architecture. The stated requirements for the positions included, among other things, a "Degree in Civil Engineering, or Architecture, or Construction equivalent experience." Plaintiff did not possess either degree.

19. Plaintiff requested, and Defendant approved, Plaintiff's continuous medical leave of absence from March 27, 2006, to June 27, 2006, for "medical treatment, rest, referral visits and testing" for "ulcerative colitis and intermittent leaves of absence through March 27, 2007, for medical treatments, rest and referral visits.

20. When requesting these leaves, Plaintiff signed forms, acknowledging: "I understand that if I fail to return to work or request an extension of leave by the return date stated above, my associate benefits shall be subject to forfeiture and the company will have no further obligation to continue my employment." Plaintiff testified that she had no problems with Defendant regarding her request for a leave of absence.

21. In June 2006, Plaintiff advised Defendant that she did not have a release from her physician to return to work. Plaintiff contends she was told by Defendant to "take another leave of absence if [she] had more doctor's appointments."

22. On June 21, 2006, Plaintiff requested, and Defendant

approved, a continuous leave of absence from June 21, 2006, to September 21, 2006. Plaintiff again signed a form acknowledging that Defendant was not obligated to continue her employment if she did not return to work or request a leave extension by the return date of September 21, 2006.

23. Plaintiff understood that, pursuant to the FMLA and the information contained in the Leave of Absence Packet, Defendant had no obligation to hold open her position as Construction Coordinator longer than twelve (12) weeks from the start of her leave period in March 2006.

24. While Plaintiff was on leave, Mr. Spinks was transferred to a Civil Engineer Manager position in the Design Department that was not open in December 2005. Defendant contends this transfer was in June 2006 after Mr. Spinks completed eighteen (18) months in his position as Construction Coordinator. Plaintiff contends Mr. Spinks' transfer was in May 2006.

25. On September 12, 2006, Plaintiff filed a Charge of Discrimination with the EEOC. By this time, Defendant no longer held Plaintiff's position of Construction Coordinator open and communicated to her that her position had been filled.

26. Plaintiff did not return to Defendant's employ when her approved leave of absence expired on September 21, 2006, as she did not have a release from her physician to return to

>   work with or without restrictions.
>
> 27. In 2007, Plaintiff contacted Defendant about returning to work. Travis Bowman, Human Resources Manager for Defendant's Realty Department, responded to Plaintiff. Mr. Bowman sent Plaintiff and her attorney a number of e-mail messages providing "sheets and sheets" of listings of open positions for which Plaintiff could apply. Plaintiff also had access to Defendant's public list of open positions posted on the Internet.
>
> 28. By March 27, 2007, Plaintiff had been on leave from Defendant for one year. Defendant contends Plaintiff had not applied for any open position, however, Plaintiff states she had applied for multiple positions within Defendant.
>
> 29. Defendant could have terminated Plaintiff's employment at that time pursuant to its Leave of Absence Policy, which prohibited an associate from being on a medical leave of absence in excess of one year. However, Mr. Bowman allowed Plaintiff one additional month, to April 25, 2007, to secure a new position with Defendant. Mr. Bowman advised Plaintiff that, if she was "unable to secure a position by this date, [her] employment [would] be terminated."
>
> 30. On April 3, 6, and 21, 2007, Mr. Bowman again e-mailed to Plaintiff lists of open positions with Defendant. By April 25, 2007, Plaintiff had not secured a new position with

      Defendant or otherwise obtained a release from her physician permitting her to return to work with or without restrictions. On May 4, 2007, Mr. Bowman sent to Plaintiff a letter terminating her employment.

31. When Plaintiff took her medical leave of absence in March 2006, she understood that she would be paid for ninety (90) days pursuant to Defendant's Salary Continuance Policy. Defendant contends that after ninety (90) days, Plaintiff's leave should have been converted to an unpaid leave of absence. Plaintiff contends she understood she would be paid for an additional ninety (90) days pursuant to Defendant's policy, regarding a "new and unrelated disability." Defendant contends Plaintiff received overpayments in the amount of $27,930.44.

32. Defendant made a demand for this overpayment, but, Plaintiff has not paid any overpayment to Defendant.

**II.  Standard of review**

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party

AO72A
(Rev. 8/82)

opposing the motion for a jury to return a verdict for that party. *Id.* In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256-7 (citing Fed. R. Civ. P. 56(e)). In order to withstand the motion for summary judgment, plaintiffs must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). A mere scintilla of evidence is insufficient to avoid summary judgment. *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir. 1994). Although summary judgment is to be used sparingly in employment discrimination cases, *see Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), it is appropriate where

one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim; *see Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 865 (8th Cir. 1997).

### III.  Gender and Disability Discrimination Claims

Defendant contends that certain claims should be dismissed as Plaintiff failed to exhaust her administrative remedies or that they are time-barred.  Plaintiff contends that she properly presented her claims to the EEOC and timely filed her Complaint.

Title VII requires a claimant to timely file a discrimination charge with the EEOC before she may bring a Title VII action in court.   42  U.S.C.  §  2000e-5(e)(1).   "[E]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."  *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) *quoting Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996).  "Allegations made outside the scope of the EEOC charge...circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000).

The law requires the charge to be filed within 180 days of the allegedly discriminatory act.  29 U.S.C. § 626(d)(1).  Any employment discrimination pursuant to ACRA must be filed within

one year after the alleged discriminatory act ocurred, or within ninety days of receipt of a "Right to Sue" letter or a notice of "Determination" from the EEOC, whichever is later. Ark. Code Ann. § 16-123-107(c)(3).

Plaintiff's gender discrimination claims are based upon: (1) David Oshinski's failure to sign her transfer request form on December 5 and 6, 2005; (2) Plaintiff not receiving her requested transfer in January 2006; and (3) a hostile work environment created by Plaintiff's co-workers after Plaintiff complained of the alleged gender discrimination.

Plaintiff filed her initial Charge of Discrimination with the EEOC on September 12, 2006, alleging she was denied a promotion due to her gender and in retaliation for complaining of gender discrimination. Plaintiff alleged the latest act of discrimination took place in May 2006 when a similarly-situated male co-worker received a transfer. On April 6, 2007, Plaintiff filed a second EEOC charge alleging retaliation of a continuing nature for the first charge with the last date of retaliation on March 27, 2007. On September 12, 2007, Plaintiff filed a third EEOC charge alleging she was discharged on May 5, 2007, because of a disability and in retaliation for filing the previous two EEOC charges.

In ruling on a motion for summary judgment, the district court "is not obligated to wade through and search the entire

record for some specific facts which might support the nonmoving party's claim," rather the nonmoving party must designate the specific genuine issues of material fact that preclude summary judgment. *Holland v. Sam's Club*, 487 F.3d 641 (8th Cir. 2007)(citation omitted). In her response, Plaintiff stated:

> Herein, Plaintiff timely filed her discrimination charges with the EEOC, on or about September 12, 2006, alleged gender discrimination and hostile work environment; she filed an amended charge alleging retaliation. In or about September 2007, she filed an additional charge for disability discrimination. The discrimination continued and was ongoing from December 2, 2005, through the following termination date of May 4, 2007 (the last alleged date of a discriminatory act). She timely filed suit after receiving her notice of her right to sue from the EEOC on or about July 5, 2007.

These general, conclusory and cursory statements are insufficient to support Plaintiff's claim of a continuing violation. *Id*. at 644, FN5. The Court finds that Plaintiff failed to file her EEOC Charge within 180 days of the discriminatory acts that comprise her Title VII gender discrimination claims in connection with the denial of her transfer, therefore, those claims are dismissed. While Plaintiff contends she included her hostile work environment claim on her initial EEOC charge filed September 12, 2006, the Court does not believe this claim was ever presented to the EEOC. Although we will "liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that 'there is a difference between liberally reading a claim which lacks

specificity, and inventing, *ex nihilo*, a claim which simply was not made.'" *Parisi v. Boeing, Co.*, 400 F.3d 583, 585 (8th Cir. 2005)(*quoting Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996)). The Court finds Plaintiff's hostile work environment claim must be dismissed for failure to exhaust administrative remedies. Her gender discrimination pursuant to ACRA is likewise barred as her Complaint was not filed within one year of the alleged discriminatory acts.

Defendant also contends that Plaintiff's claims of disability discrimination pursuant to the ADA and ACRA should be dismissed as Plaintiff failed to exhaust her administrative remedies in connection with her ADA claim and her ACRA claim is time-barred as it was not filed within one year of the alleged discriminatory acts. In her First Amended Complaint, Plaintiff asserts "[t]he Defendant refused to make reasonable accommodations for the Plaintiff, and failed to engage in the interactive process, in violation of the Americans with Disabilities Act."

Plaintiff again responds that the discrimination was ongoing from December 2, 2005 through May 4, 2007, without citing any facts to support this contention. Plaintiff's disability discrimination claims arise from Karen Ritchey's supervision of Plaintiff from December 2005 through March 27, 2006. However, none of the EEOC charges filed by Plaintiff included any mention of disability discrimination in the form of Defendant refusing to

AO72A
(Rev. 8/82)

make reasonable accommodations or engage in the interactive process. Accordingly, Plaintiff's ADA claim is dismissed for failure to exhaust her administrative remedies. Additionally, her ACRA disability claim is dismissed as time-barred as her Complaint was filed more than one year after the alleged discriminatory acts occurred.

### IV.  FMLA Claim

Plaintiff contends Defendant violated the FMLA by refusing to reinstate her to the same or a substantially similar position after the expiration of her medical leave. Defendant contends Plaintiff was not entitled to reinstatement because her leave of absence extended beyond the twelve (12) week period authorized by the FMLA.

Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise of this right. 29 U.S.C. § 2615(a)(1). Generally, when an employee completes her FMLA leave, she is entitled to be restored to her position or a substantially similar position. *See* 29 U.S.C. § 2614(a)(1). However, if the employee is unable to perform an essential function of the position because of the

continuation of a serious health condition, she has no right to restoration to another position under the FMLA. 29 C.F.R. § 825.214(b).

It is undisputed that Defendant permitted Plaintiff to take FMLA leave and that after the expiration of twelve weeks, Plaintiff was unable to return to work as she had not obtained a release from her physician. Accordingly, she had no right to restoration at the expiration of the FMLA leave, and Defendant is entitled to summary judgment on this claim.

### V. Retaliation, Wrongful Termination & Unjust Enrichment

After reviewing the pleadings and the evidence on file in the light most favorable to the nonmoving party as required, the court finds that there are issues of fact which preclude summary judgment on Plaintiff's retaliation and wrongful termination claims, including, but not limited to whether Defendant's proffered reason for Plaintiff's termination is pretextual and whether Defendant terminated Plaintiff in retaliation for Plaintiff exercising any rights granted to her by the ADA, FMLA, Title VII or ACRA. Additionally, the Court finds a genuine issue of material fact exists as to whether Plaintiff is entitled to the $27,930.44 that Defendant contends was erroneously paid to Plaintiff while she was on medical leave.

### VI. Conclusion

Based on the foregoing, Plaintiff's Motion for Summary

AO72A
(Rev. 8/82)

Judgment is DENIED.  Defendant's motion for summary judgment is GRANTED in part and DENIED in part.  Defendant's Motion is GRANTED as to Plaintiff's claims of gender discrimination in violation of Title VII and ACRA and disability discrimination in violation of the ADA and ACRA and these claims are DISMISSED.  Defendant's Motion is DENIED as to Plaintiff's claims for retaliation, wrongful termination and Defendant's counterclaim for unjust enrichment.  These claims remain set for a jury trial beginning Monday, November 17, 2008.

    IT IS SO ORDERED this 6th day of November, 2008.

/s/ Robert T. Dawson
**HONORABLE ROBERT T. DAWSON**
**UNITED STATES DISTRICT JUDGE**